1   SCOTT N. SCHOOLS (SCBN 9990)
    United States Attorney
2
    BRIAN J. STRETCH (CSBN 163973)
3   Chief, Criminal Division

4   SUSAN B. GRAY (CSBN 100374)
    Assistant United States Attorney
5
    450 Golden Gate Avenue, 9th Floor
6   San Francisco, CA 94102
    Telephone: 415.436.7324
7   Facsimile: 415.436.6748
    Email: sgray2@usdoj.gov
8
    Attorneys for United States of America
9

10
                    UNITED STATES DISTRICT COURT
11
                  NORTHERN DISTRICT OF CALIFORNIA
12

13  UNITED STATES OF AMERICA,          )
                                       )        No. 07-
14                    Plaintiff,       )                      **MMC**
                                       )
15           v.                        )        COMPLAINT FOR FORFEITURE
                                       )
16  APPROXIMATELY $61,505 IN UNITED    )
    STATES CURRENCY,                   )
17                                     )
                      Defendant.       )
18  _____)

19

20                      NATURE OF THE ACTION

21       1.    This is a judicial forfeiture action, as authorized by 21 U.S.C. § 881(a)(6),

22  involving the seizure of defendant approximately $61,505 in United States Currency ("defendant

23  $61,505") which was seized as money furnished or intended to be furnished by a person in

24  exchange for a controlled substance, or money traceable to such an exchange, or money used or

25  intended to be used to facilitate a violation Subchapter I, Chapter 13 of Title 21 United States

26  Code.

27                      JURISDICTION AND VENUE

28       2.    This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355(a), and 21 U.S.C.

1  § 881(a)(6).

2      3.    This action is timely filed in accordance with 18 U.S.C. § 983(a)(3)(A).

3      4.    Venue in this Court is proper because defendant $61,505 was seized in the

4  Northern District of California.  28 U.S.C. §§ 1355(b) and 1395.

5      5.    Intra-district venue is proper in the San Francisco Division within the

6  Northern District of California.

7                                    PARTIES

8      6.    Plaintiff is the United States of America.

9      7.    Defendant is approximately $61,505 in United States Currency.

10                                    FACTS

11     8.    On or about May 29, 2007, DEA received detailed information from a

12 confidential informant regarding suspicious travel.  Frank Joseph Alioto, Jr. ("Alioto")  was

13 returning on a round trip return flight from Atlanta, Georgia, to San Francisco International

14 Airport ("SFO") on Delta Airlines Flight #611 with no checked luggage.

15     9.    Alioto  was originally scheduled to travel to Atlanta on May 25, 2007, and return

16 to San Francisco on May 28, 2007.  He made the reservation on May 24 and paid approximately

17 $1,900.00 in cash for the first class ticket. While in Atlanta, Alioto  changed his return flight

18 three times.  On the day before his May 28 scheduled return, Alioto changed his itinerary to

19 return to San Francisco on Delta Airlines Flight #611 which was due to arrive on May 30, 2007,

20 at approximately 12:56 p.m. S/A Byrd knew from his training that Atlanta, Georgia is known as

21 a drug hub; a city to which drugs may be transported from source cities before subsequent

22 distribution .

23     10.    On or about May 29, 2007, Special Agent ("S/A") Willie Byrd conducted a

24 check of a commercial database and a NCIC check on Alioto.  The commercial data base search

25 revealed where Alioto resided and gave his California drivers license number.  The NCIC check

26 revealed that Alioto was a white  male, 5'11" tall, weighing 185 pounds, with brown hair, hazel

27 eyes and was born on October 21, 1977.  NCIC records further revealed that Alioto has seven

28 prior drug arrests and three drug convictions.

Complaint for Forfeiture
No. 07-                                    2

1    11.    On May 26, 2007, Alioto was arrested in Myrtle Beach, South Carolina for
2    operating an unregistered vehicle, no proof of ownership, no valid driver's license and speeding.
3    Alioto posted bond in the amount of $668.00 in cash. At the time of his arrest Alioto had in his
4    possession a total of $2,731.00 in cash. Alioto listed his employer or occupation as a family
5    restaurant.

6    12.    On May 30, 2007, Delta Airline flight #611 arrived at gate C40 at approximately
7    12:56 p.m. Agents from DEA Task Force 2 observed Alioto deplane. He was the second
8    passenger to exit Gate C40. Alioto was carrying a brown leather gym bag and a small rolling
9    bag. DEA Task Force 2 agents maintained foot surveillance as Alioto went through the secured
10   check point exit, proceeded through the baggage claim area and out the airport doors to the Delta
11   Airlines curbside pick-up area.

12    13.    S/A Willie Byrd and Task Force Agent ("TFA") Steve Maes approached Alioto
13   and identified themselves. S/A Byrd advised Alioto that he was not under arrest and was free to
14   go. TFA asked Alioto if he would answer some questions and Alioto said "yes, but my ride will
15   be here shortly." S/A Byrd asked Alioto for identification and Alioto provided a California
16   drivers license, which S/A Byrd examined and returned. TFA Maes asked Alioto about his travel
17   itinerary. Alioto stated that he had flown in from Atlanta, Georgia. He said he had flown to
18   Atlanta on May 25th and then on to Myrtle Beach, South Carolina for the "Black Motorcycle
19   Weekend" on May 26th and returned to Atlanta on May 28th.

20    14.    TFA Maes asked Alioto if he currently had illegal drugs or a large amount of
21   U.S. Currency in his possession. Alioto stated that he had approximately $25,000.00 U.S.
22   Currency in his luggage.

23    15.    At approximately 1:09 p.m., a silver 750i BMW with paper tags parked curbside
24   in front of Alioto. Alioto told agents the BMW was his ride home. TFA Maes asked Alioto for
25   consent to search his luggage for U.S. currency or illegal narcotics. Alioto declined, stating that
26   he was late and his ride was there. S/A Byrd explained to Alioto that the agents had enough
27   reasonable suspicion to believe the luggage contained narcotics or currency that was possible
28   proceeds of narcotics transactions. S/A Byrd told Alioto that he was still free to go, but that agents

Complaint for Forfeiture
No. 07-                                          3

1  were temporarily detaining the two pieces of luggage so that a trained narcotics canine could

2  check out the luggage and if the dog alerted the agents would seek a search warrant. Alioto stated

3  "Go get the dog."

4      16.     TFA Maes approached the driver of the BMW and explained that Alioto was not

5  under arrest and was not in any trouble. When the driver asked how long the canine dog check

6  would take, TFA Maes explained that it should take about 5 minutes. When asked for his name

7  the driver was reluctant, stated "Joe" and refused to give his last name. The driver stated that he

8  wanted to find a parking space for the BMW and wait until Alioto was through. The driver, later

9  identified as Jonas Teele, drove away.

10     17.     S/A Byrd called in TFA Marty Mahon to respond to the location with his

11  certified narcotics detection canine, "Maximus." Maximus alerted to the two luggage pieces by

12  barking and scratching which indicated to TFA Mahon that the odor of narcotics was emanating

13  from the luggage. "Maximus" is certified to detect heroin, cocaine, marijuana and

14  methamphetamine. TFA Mahon has handled and trained "Maximus" since May of 2001.

15  "Maximus" has successfully located drugs over 300 times in past cases and training.

16     18.     After Maximus alerted to the luggage, Alioto told the agents that the dog had

17  alerted because "legal marijuana" was previously carried inside of the luggage. When agents

18  asked Alioto if he had a medical cannabis card, he replied "no."

19     19.     S/A Byrd asked Alioto if agents could search his luggage. Alioto replied "Go

20  ahead and search the bags. There aren't any drugs in it." S/A Byrd searched the luggage pieces

21  while TFA Maes interviewed Alioto.

22     20.     Alioto told TFA Maes that he currently owns a record company with Jonas Teele

23  called Wash House Records and that he makes approximately $10,000.00 to $15,000.00 a month

24  from the company. Alioto said he sold "five beats" to Lil Jon and "five beats" to Lil Jon's -

25  associates. He was unable to provide contact numbers or names for anyone to whom he had sold

26  "beats." He refused to tell the agents the price of the "beats", stating "the amount of the beats

27  varies." When asked which financial institution he used, Alioto stated that he did not have a bank

28  account and did not believe in banks. Alioto stated that he planned to keep the currency he had at

Complaint for Forfeiture
No. 07-                                    4

1  his mother's residence. When asked if he had ever been arrested, Alioto stated that he had only
2  been arrested for vandalism and "this weekend for a suspended DL".

3     21.   S/A Byrd began by searching Alioto's brown leather gym bag. In the main
4  compartment of the leather gym bag he found a white plastic bag which contained numerous
5  large bundles of rubber banded United States Currency. S/A Byrd located a pair of tennis shoes,
6  with one large rubber banded bundle of U.S. Currency in each shoe. As S/A Byrd continued the
7  search he found a grey tennis shoe bag that contained a pair of tennis shoes and two large bundles
8  of U.S. currency bound together with rubber bands.

9     22.   S/A Byrd then searched Alioto's small brown rolling bag. While searching the
10 main compartment, he observed two Western Union customer receipts. On May 29, 2007, Alioto
11 made a $500.00 payment on account number ************9108 to Capitol One Car Services in
12 Capone, Virginia. On the same date, Alioto made a $700.00 payment on account number
13 ************7515 to Orchard Bank HSBC in Cloud, Oregon.

14    23.   S/A Byrd continued to search the main compartment of the rolling bag and found
15 multiple large bundles of U.S. Currency bound together with rubber bands. He also located a pair
16 of tan pants. He found multiple large bundles of U.S. Currency bound together with rubber bands
17 inside both front pockets of the tan pants.

18    24.   TFA Maes told Alioto that he was going to seize the currency pending further
19 investigation. Alioto was given a receipt for the money and left the airport in a taxi.

20    25.   At approximately 1:45 p.m. TFA Mahon had his certified narcotic detection
21 canine, "Maximus," examine defendant $61,505. During a systematic search of the baggage
22 claim area where the currency had been secreted, "Maximus" alerted to the currency which
23 indicated the odor of narcotics emanating from it.

24    26.   The denominations of the defendant $61,505 were:2040 x $20 dollar bills; 1798 x
25 $10 dollar bills; 545 x $5 dollar bills. The packaging and denominations of defendant $61,505 are
26 consistent with those used for, or from, the sale of illegal controlled substances.

27    27.   On May 30, 2007, S/A Byrd and TFA Maes transferred the seized money to the
28 Bank of America located at San Francisco International Airport. The official bank count was

Complaint for Forfeiture
No. 07-          5

**1** $61,505.00. The money was converted into a Bank of America cashier check #416552879 made
**2** payable to the United States Marshals Service.

**3**      28.     On June 4, 2007, S/A Byrd contacted the California Employment Development
**4** Department ("EDD") regarding Alioto's employment history.  EDD records show no reported
**5** wages for Alioto.

**6**      29.     On August 16, 2007, S/A Byrd and TFA Marty Mahon approached Alioto at the
**7** Oakland International Airport after he deplaned from Delta Airlines Flight #1084 from Atlanta,
**8** Georgia.  Alioto was traveling on a first class ticket which he had purchased with cash that same
**9** day.  Alioto gave the agents permission to search his bags.  S/A Byrd found one large bundle of
**10** U.S. Currency bound together with rubber bands.  Alioto said that he had exactly $30,000 in his
**11** possession.  He told the agents the remainder of the money was in his pockets.  The agents noticed
**12** bulges in Alioto's cargo short pockets.  Alioto agreed to show the money to the agents.

**13**      30.     S/A Byrd observed large bundles of U.S. Currency bound together with rubber
**14** bands.  Alioto told the agents the money was from his business, Wash House Records.  Alioto
**15** was not able to provide any receipts for the business or cash in his possession.  Alioto gave
**16** permission for a narcotic detection canine to examine the currency.  The dog, Maximus, alerted to
**17** the currency by scratching and barking.

**18**      31.     S/A Byrd gave Alioto a receipt for the currency pending further investigation.  A
**19** total of $34,320.00 was seized in the following denominations: 124 x $100, 25 X $50, 959 X $20,
**20** 111 X $10, 63 X $5, 65 X $1. The packaging and denominations of the currency are consistent
**21** with those used for, or from, the sale of illegal controlled substances.  The currency was
**22** converted into Bank of America cashier check #418576511 and is currently in the possession of
**23** the United States Marshals Service.

**24**      32.     Due to the totality of the circumstances, defendant $61,505 in United States
**25** Currency was seized as money furnished or intended to be furnished by a person in exchange for a
**26** controlled substance, or traceable to such an exchange, or money used or intended to be used to
**27** facilitate a violation of Subchapter I, Chapter 13 of Title 21 United States Code.  Specifically,
**28** based on the training and experience of the Task Force agents, the totality of the circumstances on

Complaint for Forfeiture
No. 07-                              6

1    which the seizure was based included the denominations of and packaging of the currency in
2    multiple bundles with rubber bands, no verification of the source of the currency, numerous prior
3    drug arrests and three drug convictions, untruthful statements to agents concerning his prior drug
4    arrest record, differing statements about his employment to law enforcement authorities in South
5    Carolina and in San Francisco, the canine positive alert, first class airline tickets purchased in cash
6    on the day before travel to a drug hub city, with a quick turn around and three subsequent changes
7    in flight times.

8                                    VIOLATION

9        33.      The United States incorporates by reference the allegations in paragraphs one
10   through 32 as though fully set forth.

11       34.      Section 881(a)(6) of Title 21 of the United States Code, provides for the
12   forfeiture of all money furnished or intended to be furnished by any person in exchange for a
13   controlled substance or listed chemical in violation of Subchapter I, Chapter 13 of Title 21 United
14   States Code, all proceeds traceable to such an exchange and all money used or intended to be used
15   to facilitate any violation of Subchapter I, Chapter 13 of Title 21 United States Code.

16       35.      In light of the foregoing, defendant $61,505 in United States Currency is subject
17   to judicial forfeiture.

18                          *    *    *    *    *

19       WHEREFORE, plaintiff United States of America requests that due process issue to
20   enforce the forfeiture of defendant $61,505; that notice be given to all interested parties to appear
21   and show cause why forfeiture should not be decreed; that judgment of forfeiture be entered; that
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

Complaint for Forfeiture
No. 07-                                    7

1 the Court enter judgment forfeiting defendant $61,505; and that the United States be awarded

2 such other relief as may be proper and just.

3

4                                          Respectfully submitted,

5                                          SCOTT N. SCHOOLS
                                           United States Attorney
6

7 Dated: October 25, 2007

8                                          STEPHANIE M. HINDS
                                           Assistant United States Attorney
9

10 Assigned to:
                   AUSA S. Gray
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Forfeiture
No. 07-                          8

1         VERIFICATION

2  I, Willie Byrd, state as follows:

3         1.      I am a Special Agent with the Drug Enforcement Administration Task Force,

4  United States Department of Justice, and am the case agent. As such, I am familiar with the facts,

5  and the investigation leading to the filing of this Complaint for Forfeiture.

6         2.      I have read the Complaint and believe the allegations contained in it to be true.

7                         *     *     *     *     *

8         I declare under penalty of perjury that the foregoing is true and correct. Executed this

9  23 day of October, 2007, in San Francisco, California.

10

11

12                         WILLIE BYRD
                           Special Agent
13                         Drug Enforcement Administration

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Forfeiture
No. 07-                    9