1  DAVID M. MICHAEL, SBN 74031
   LAW OFFICES OF DAVID M. MICHAEL
2  101 California Street, Suite 2450
   San Francisco, CA 94111
3  Telephone:  (415) 946-8996
   Facsimile:   (877) 538-6220
4  E-mail:       dmmp5@aol.com
5
6  EDWARD M. BURCH, SBN 255470
   12 Oakwood St. #8
7  San Francisco, CA 94110
   Telephone: (415) 518-0498
8  Facsimile:  (877) 767-3821
   E-mail: emikeb11@aol.com
9
10 Attorneys for Claimant
   FRANK JOSEPH ALIOTO
11

12                **UNITED STATES DISTRICT COURT**
13              **NORTHERN DISTRICT OF CALIFORNIA**
14

15 UNITED STATES OF AMERICA,

16          Plaintiff,                        **No. C 07-5413 MMC**

17 v.                                         **MEMORANDUM OF POINTS AND**
                                              **AUTHORITIES IN SUPPORT OF**
   APPROXIMATELY $61,505.00                   **MOTION TO SUPPRESS**
18 IN UNITED STATES CURRENCY,                 **EVIDENCE**
19
            Defendant.                        **Date:  25 July 2008**
20 _____ /      **Time:  9:00 a.m.**
                                              **Dept:  Courtroom 7, 19th Floor**
21 FRANK JOSEPH ALIOTO,

22          Claimant.

23 _____ /
24
25
26
27
28

                                  -1-

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITES.................................................................................. 3

STATEMENT OF ISSUES................................................................................. 6

STATEMENT OF FACTS .................................................................................. 7

ARGUMENT ....................................................................................................... 9

I. CLAIMANT HAS STANDING TO CHALLENGE
THE DETENTION, SEIZURE AND SEARCH OF HIS LUGGAGE............................ 10

II. THE GOVERNMENT BEARS THE BURDEN
OF PROVING THAT THE WARRANTLESS SEARCH
AND SEIZURE WERE NOT VIOLATIVE OF THE FOURTH AMENDMENT.......... 10

III. AGENTS LACKED REASONABLE SUSPICION
AND CANNOT SATISFY THE STANDARDS TO JUSTIFY
A *TERRY* -TYPE INVESTIGATIVE DETENTION OF CLAIMANT'S LUGGAGE .... 11

    A. Claimant's Travel Was Not Suspicious .................................................. 13

    B. Claimant's Behavior and Responses Should Have Quelled
Any Minimal Suspicions That Agents Previously May Have Had,
and The Consensual Encounter Should Have Ended
When Claimant Expressed His Desire To End It .............................................. 17

    C. The Totality of the Circumstances Show that Agents
Lacked A Reasonable and Articulable Suspicion of Illegal Activity................. 19

IV. EVEN IF AGENTS HAD INITIAL REASONABLE SUSPICION
TO TEMPORARILY DETAIN THE LUGGAGE,
AGENTS' LACK OF DUE DILIGENCE IN SECURING A DOG SNIFF
RENDERS THE SEIZURE ILLEGAL UNDER *PLACE* AND *$191,910.00*................ 20

V. ALL EVIDENCE OBTAINED AS A RESULT OF
AN UNLAWFUL WARRANTLESS SEARCH IS THE
"FRUIT OF THE POISONOUS TREE" AND MUST BE SUPPRESSED .................... 23

CONCLUSION ................................................................................................... 23

CERTIFICATE OF SERVICE............................................................................. 24

-2-

1

# **TABLE OF AUTHORITIES**

2

Page

3                                             Cases

4   *Adams v. Williams,*
    407 U.S. 143 (1972) ...................................................................... 11
5

6   *Brown v. Texas,*
    443 U.S. 47 (1979) ........................................................................ 11
7

8   *Davis v. Mississippi,*
    394 U.S. 721 (1969) ...................................................................... 11
9

10  *Delaware v. Prouse,*
    440 U.S. 648 (1979) ...................................................................... 11
11

12  *Florida v. Rodriguez,*
    469 U.S. 1 (1984) ..................................................................... 12, 17
13
    *Florida v. Royer,*
14  460 U.S. 491 (1983) ...................................................................... 12

15  *Gilles v. Ripecky,*
    511 F.3d 239 (2nd Cir. 2007) ...................................................... 12
16

17  *Rakas v. Illinois,*
    439 U.S. 128 (1979) ...................................................................... 10
18

19  *Reid v. Georgia,*
    448 U.S. 438 (1980) ....................................... 11, 13, 14, 15, 16
20

21  *Segura v. United States,*
    468 U.S. 796 (1984) ...................................................................... 23
22
    *Terry v. Ohio,*
23  392 U.S. 1 (1968) .................................................................... 11, 12

24  *Trupiano v. United States,*
    334 U.S. 699, 705 (1948) ............................................................ 11
25

26  *United States v. $ 124,570.00 in United States Currency,*
    873 F.2d 1240 (9th Cir. 1989) .................................................... 22
27

28  *United States v. $ 191,910.00 in United States Currency,*
    16 F.3d 1051 (9th Cir. 1993) .................................. 18, 19, 20, 21, 22, 23

*United States v. $ 242,484.00 in United States Currency,*
351 F.3d 499 (11th Cir. 2003)................................................................. 16, 18

*United States v. $ 53,082.00 in United States Currency,*
985 F.2d 245 (6th Cir. 1993)................................................................. 14

*United States v. $ 67,220.00 in United States Currency,*
957 F.2d 280 (6th Cir. 1992)................................................................. 17

*United States v. Ayarza,*
874 F.2d 647 (9th Cir. 1989)................................................. 13, 14, 15, 17

*United States v. Arvizu,*
534 U.S. 266 (2002)................................................................. 12

*United States v. Baron,*
94 F.3d 1312 (9th Cir. 1996)................................................................. 13

*United States v. Brignoni-Ponce,*
422 U.S. 873 (1975)................................................................. 11

*United States v. Burgos,*
94 F.3d 849 (4th Cir. 1996)................................................................. 14

*United States v. Carbahal,*
956 F.2d 924 (9th Cir. 1992)................................................................. 10

*United States v. Cortez,*
449 U.S. 411 (1981)................................................................. 12

*United States v. Delgadillo-Zelasquez,*
856 F.2d 1292 (9th Cir. 1988)................................................................. 11

*United States v. Dennis,*
115 F.3d 524 (7th Cir. 1997)................................................................. 14

*United States v. Erwin,*
803 F.2d 1505 (9th Cir. 1986)................................................................. 17

*United States v. Eustaquio,*
198 F.3d 1068 (8th Cir. 1999)................................................................. 15

*United States v. Fletcher,*
91 F.3d 48 (8th Cir. 1996)................................................................. 14

-4-

*United States v. Flowers,*
912 F.2d 707 (4th Cir. 1990) ........................................................ 15

*United States v. Galvan,*
953 F.2d 1098 (8th Cir. 1992) ...................................................... 15

*United States v. Holzman,*
871 F.2d 1496 (9th Cir. 1989) ...................................................... 22

*United States v. Jennings,*
985 F.2d 562 (6th Cir. 1993) ........................................................ 14

*United States v. Jerez,*
108 F.3d 684 (7th Cir. 1997) ........................................................ 14

*United States v. Johnson,*
64 F.3d 1120 (8th Cir. 1995) ........................................................ 14

*United States v. LaFrance,*
879 F.2d 1 (1st Cir. 1989) ........................................................... 22

*United States v. Lingerfelter,*
997 F.2d 632 (9th Cir. 1993) ........................................................ 10

*United States v. McMurray*
34 F.3d 1405 (8th Cir. 1994) ........................................................ 14

*United States v. McNeil,*
4 F.3d 987 (4th Cir. 1993) ........................................................... 14

*United States v. Odum,*
72 F.3d 1279 (7th Cir. 1995) ........................................................ 14

*United States v. O'Neal,*
17 F.3d 239 (8th Cir. 1994) .......................................................... 14

*United States v. Padilla,*
508 U.S. 77 (1993) ..................................................................... 10

*United States v. Perez,*
37 F.3d 510 (9th Cir. 1994) ................................................... *passim*

*United States v. Place,*
524 U.S. 321 (1998) ............................................................ *passim*

*United States v. Polk,*
97 F.3d 1096 (8th Cir. 1996) ......................................................................... 14

*United States v. Respress,*
9 F.3d 483 (6th Cir. 1993) ............................................................................. 14

*United States v. Singleton,*
987 F.2d 1444 (9th Cir. 1993) ....................................................................... 10

*United States v. Scarborough,*
128 F.3d 1373 (10th Cir. 1997) ..................................................................... 14

*United States v. Sokolow,*
490 U.S. 1 (1989) .......................................................................................... 16

*United States v. Tehrani,*
49 F.3d 54 (2nd Cir. 1995) ............................................................................ 12

*United States v. Ushery,*
968 F.2d 575 (6th Cir. 1992) ........................................................................ 15

*United States v. Underwood,*
97 F.3d 1453 (6th Cir. 1996) ........................................................................ 14

*United States v. White,*
42 F.3d 457 (8th Cir. 1994) .......................................................................... 14

*Wong Sun v. United States,*
371 U.S. 471 (1963) ...................................................................................... 23

<u>Constitutional Provisions</u>

Fourteenth Amendment ................................................................................. 11

Fourth Amendment ............................................................................... *passim*

STATEMENT OF ISSUES

Claimant Frank Joseph Alioto hereby moves to suppress all evidence seized and the fruits thereof, from the seizure and search of his person and his luggage on or about May 30, 2007, at the San Francisco International Airport.  He submits that DEA agents Willie Byrd and Steve Maes lacked probable cause and lacked a reasonable and articulable suspicion of criminal activity necessary to justify the detention of his luggage on said date.  Assuming, arguendo, that this Court finds sufficient justification under the Fourth Amendment for the initial stop and detention, the search of claimant's luggage unlawfully expanded the scope of an investigative detention of luggage under *United State v. Place*. Therefore, the government will not be able to satisfy its burden under the Fourth Amendment, requiring suppression of the evidence, including, items seized pursuant to the search of claimant's person and his luggage.

STATEMENT OF FACTS [1]

On May 29, 2007, relying on information from a confidential informant, DEA Special Agent (S/A) Willie Byrd began an investigation of the arrival of claimant Frank Joseph Alioto ("Claimant") at the San Francisco International Airport on May 30, 2007.

The confidential informant told S/A Byrd in a telephone conversation that Claimant was flying on a round trip from Atlanta, Georgia to San Francisco with no check in luggage, and had made the reservation and paid approximately $1,900 cash for the first class ticket the day before

---

[1]  For the purpose of this motion, the statement of facts are those taken from the investigative reports of the DEA agents, as recited in the Complaint for Forfeiture, filed herein on 23 October 2007.  Claimant does not accept the accuracy of such statements, but only presents them for the limited purpose of showing that, even if true, such representations did not justify the detention of Claimant's luggage.

departure. [2] Claimant had apparently departed San Francisco on May 25, 2007 and was originally scheduled to return to San Francisco on May 28, 2007, but had changed his return flight three times and was scheduled to return on Delta Airlines flight #611 on May 30, 2007, at 12:56pm.

S/A Byrd conducted database checks on Claimant that revealed that Claimant was a California resident with valid driver's license, and that Claimant's criminal history consisted of 3 misdemeanor convictions for possession of small amounts of marijuana. Additionally, an NCIC check performed by S/A Byrd revealed that Claimant had a misdemeanor arrest in Myrtle Beach, South Carolina on May 26, 2007 for traffic violations, that Claimant possessed cash on that date, posted bond, in cash, for that charge, and that Claimant listed "family restaurant" as his "employer/occupation" at the time.

On May 30, 2007, at 12:30pm, unnamed DEA Task Force agents conducted surveillance at gate C40 at San Francisco International Airport, where Delta Airlines Flight #611 was scheduled to and eventually arrived at approximately 12:56pm. Claimant was observed exiting the gate, talking on a cell phone, carrying a brown leather bag with matching small roller luggage, and walking through the airport towards the curbside pickup area.

S/A Byrd and Task Force Agent (TFA) Steve Maes approached Claimant while Claimant was waiting at the Delta Airlines curbside pick up area, and S/A Byrd and TFA Maes initiated a "consensual encounter" and assured Claimant that it would not take long. Claimant agreed to answer questions, but told S/A Byrd and TFA Maes that he was running late, had limited time

---

[2]  While ambiguous, it becomes obvious from the context of the agents reports that Claimant paid cash for his ticket the day before his departure to Atlanta from San Francisco, which was **six days prior** to his return flight and encounter with law enforcement officers, where he was stopped and his luggage seized. This ambiguity in the reports, deliberate or unintentional, leaves the reader with the impression that Claimant paid cash for his ticket only the day before his luggage was seized in San Francisco.

and that his family is prominent and well-known in the City of San Francisco.  S/A Byrd asked

for identification and Claimant complied by providing a valid California driver's license

confirming Claimant's identity, and the license was returned. In response to being asked about

his travel itinerary, Claimant told S/A Byrd and TFA Maes that he had traveled to Atlanta, GA

on May 25th and then flown to Myrtle Beach, SC on May 26th for pleasure, to attend the "Black

Bike Weekend."

      S/A Byrd and TFA Maes asked Claimant if he had illegal drugs or a large amount of

currency in his possession. In response, Claimant told S/A Byrd and TFA Maes that he was

carrying approximately $25,000 in United States currency inside his luggage.

      At approximately 1:09pm, a silver BMW arrived and parked curbside in front of

Claimant, and Claimant informed S/A Byrd and TFA Maes that the particular vehicle was his

ride. TFA Maes then asked Claimant for consent to search his luggage, Claimant refused and

told TFA Maes, "I'm late and my ride is here."

      S/A Byrd then told Claimant that reasonable suspicion existed that the luggage contained

narcotics or currency that was possible proceeds of narcotics transactions. S/A Byrd told

Claimant that he was free to go, but that his luggage was being detained in order to have the

luggage subjected to a drug dog sniff, and, further, that a search warrant would be obtained in

order to search the luggage.[3]

---

[3] After this detention and seizure of Claimant's luggage, the DEA Agents' investigation
continued, but the claimed facts after this point in time are irrelevant to the present motion to
suppress. However, briefly and for thoroughness, the agents report claims that, after the
detention of the luggage, the following ensued: Claimant then urged agents to "go get the dog."
S/A Byrd then called TFA Marty Mahon to bring a drug sniff dog to sniff the luggage.  After an
unknown amount of time, TFA Mahon responded to the location with a drug detection canine,
which allegedly alerted positively to the luggage. Claimant stated that the dog alerted to the
luggage because medical marijuana was previously carried in the luggage. When asked Claimant

ARGUMENT

The Fourth Amendment of the United States constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Claimant and his luggage were detained and searched, without a warrant, and in violation of the Fourth Amendment of the Constitution. All evidence obtained as a result of that unlawful search and seizure should be suppressed in the instant matter.

## I.    CLAIMANT HAS STANDING TO CHALLENGE THE DETENTION, SEIZURE AND SEARCH OF HIS LUGGAGE

In order for a defendant to have standing to challenge a search on Fourth Amendment grounds, a defendant must show that under the totality of the circumstances they had a legitimate expectation of privacy in the particular place or item seized. *See e.g.*, *Rakas v. Illinois*, 439 U.S. 128 (1979); *United States v. Lingerfelter*, 997 F.2d 632, 636 (9th Cir. 1993); *United States v. Singleton*, 987 F.2d 1444, 1447 (9th Cir. 1993). A person who has a property or possessory interest in the place searched or the items seized, has a legitimate expectation of privacy sufficient to invoke the Fourth Amendment's protections to be free from unreasonable searches and seizures. *See e.g.*, *Rakas*, 439 U.S. at 148; *United States v. Padilla*, 508 U.S. 77 (1993).

In the instant case, claimant clearly has a sufficient expectation of privacy to assert a violation of his Fourth Amendment rights where he was the person stopped and the possessor and owner of the luggage that was detained and later searched.

---

responded that he did not have a Medical Cannabis card in his possession. S/A Byrd again asked Claimant for consent to search his luggage. Claimant responded by stating, "go ahead and search the bags. There aren't any drugs in it." S/A Byrd then searched the luggage, further investigation ensued and various currency and receipts were seized from the Claimant.

## II. THE GOVERNMENT BEARS THE BURDEN OF PROVING THAT THE WARRANTLESS SEARCH AND SEIZURE WERE NOT VIOLATIVE OF THE FOURTH AMENDMENT

Without question, stopping a person and detaining his luggage for possible drug violations constitutes a seizure under the Fourth Amendment (as will be discussed *infra*), and therefore must be objectively reasonable.  The Fourth Amendment embodies a strong preference for search warrants. *United States v. Carbajal*, 956 F.2d 924, 930 (9th Cir. 1992), *cert. denied*, 510 U.S. 900 (1993) (citations and quotations omitted).  Although warrantless searches are not absolutely prohibited, the exceptions to the warrant requirement are "jealously and carefully drawn." *Id.*  Thus, the government bears the burden of establishing that a warrantless search and seizure was reasonable and not violative of the Fourth Amendment, including the availability of one of the narrow exceptions to the warrant requirement. *Id.*; *United States v. Delgadillo-Zelasquez*, 856 F.2d 1292, 1295 (9th Cir. 1988).  As the Supreme Court has stated:

> It is a cardinal rule that in seizing goods and articles, law enforcement agents must secure and use warrants whenever reasonably practicable.... (citations omitted.)  This rule rests upon the desirability of having magistrates rather than peace officers determine when searches and seizures are permissible and what limitations should be placed on such activities.  (Citations omitted.)  In their understandable zeal to ferret out crime and in the excitement of the capture of suspected persons, officers are less likely to possess the detachment and neutrality with which constitutional rights of the suspect must be viewed.
>
> *Trupiano v. United States*, 334 U.S. 699, 705 (1948) (overruled on other grounds, 399 U.S. 56, 66 (1950))

In the instant case, since the seizure and subsequent search were conducted without a warrant, the government has the burden of establishing its lawfulness under the Fourth Amendment.

-11-

III.   **AGENTS LACKED REASONABLE SUSPICION AND CANNOT SATISFY THE
STANDARDS TO JUSTIFY A *TERRY* -TYPE INVESTIGATIVE DETENTION
OF CLAIMANT'S LUGGAGE**

The detention of Claimant's luggage, even if temporary, implicates the Fourth

Amendment and constitutes an unreasonable seizure.

> The *Fourth* and *Fourteenth Amendments*' prohibition of searches and seizures that
> are not supported by some objective justification governs all seizures of the
> person, "including seizures that involve only a brief detention short of traditional
> arrest. *Davis v. Mississippi, 394 U.S. 721 (1969); Terry v. Ohio, 392 U.S. 1, 16-
> 19 (1968)." United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975).* While
> the Court has recognized that in some circumstances a person may be detained
> briefly, without probable cause to arrest him, any curtailment of a person's liberty
> by the police must be supported at least by a reasonable and articulable suspicion
> that the person seized is engaged in criminal activity. See *Brown v. Texas, 443
> U.S. 47, 51 (1979); Delaware v. Prouse, 440 U.S. 648, 661 (1979); United States
> v. Brignoni-Ponce, supra; Adams v. Williams, 407 U.S. 143, 146-149 (1972);
> Terry v. Ohio, supra.*

> *Reid v. Georgia,* 448 U.S. 438, 440 (1980).

Moreover, " ... it has long been the law that 'an investigative detention must be temporary

and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the

investigative methods employed should be the least intrusive means reasonably available to

verify or dispel the officer's suspicion in a short period of time.' *Florida v. Royer*, 460 U.S. 491,

500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983) (plurality opinion); see also *United States v.

Tehrani*, 49 F.3d 54, 58, 61 (2d Cir. 1995) (scope and duration of investigative detention must be

reasonable, both as to stop and to inquiry)." *Gilles v. Repicky*, 511 F.3d 239, 245 (2nd Cir. 2007).

The government's authority to detain a person only when reasonable suspicion exists

applies to seizures of a person's possessions. See *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868,

20 L. Ed. 2d 889 (1968); *United States v. Place*, 462 U.S. 696, 706, 103 S. Ct. 2637, 77 L. Ed. 2d

110 (1983).  Moreover:

> Particularly in the case of detention of luggage within the traveler's immediate
> possession, the police conduct intrudes on both the suspect's possessory interest in

his luggage as well as his liberty interest in proceeding with his itinerary. The person whose luggage is detained is technically still free to continue his travels or carry out other personal activities pending release of the luggage [...but] such a seizure can effectively restrain the person since he is subjected to the possible disruption of his travel plans in order to remain with his luggage or to arrange for its return. Therefore, when the police seize luggage from the suspect's custody, we think the limitations applicable to investigative detentions of the person should define the permissible scope of an investigative detention of the person's luggage on less than probable cause.

*United States v. Place*, 462 U.S. 696, 708-709.

In determining whether reasonable suspicion is present, courts "look at the totality of the circumstances . . . to see whether the detaining officer ha[d] a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002) (internal quotation marks omitted) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981)).

Questions asked during an investigative stop "must be reasonably related in scope to the justification for their initiation," *United States v. Perez*, 37 F.3d 510, 513 (9th Cir. 1994), an officer's line of questioning may be broadened if he "notices additional suspicious factors, but these factors must be 'particularized' and 'objective.'" Id.; *United States v. Baron*, 94 F.3d 1312, 1319 (9th Cir. 1996).

Applying the above law to the present facts warrants the conclusion that Claimant's Fourth Amendment rights were violated. At the time Claimant unambiguously refused to give consent to search his luggage to S/A Byrd and TFA Maes, and clearly expressed his desire to leave the airport and end the consensual encounter, agents needed to have, but clearly lacked, reasonable and articulable suspicion that claimant was engaged in criminal activity to pursue the investigation any further. In other words, at that time when claimant refused consent to continue the encounter with the agents, and was told that his luggage would be detained for the purpose of executing a drug dog sniff, a seizure occurred that implicated the Fourth Amendment. At that point in time, the present DEA agents needed reasonable and articulable suspicion that Claimant's luggage contained narcotics or currency that was **connected to narcotics trafficking**. See *United States v. Ayarza,* 874 F.2d 647, 651 (9th Cir. 1989). S/A Byrd and TFA Maes did not

-13-

have that necessary particularized and objectively reasonable suspicion, therefore, the detention of Claimant's luggage violated his Fourth Amendment rights.

### A. Claimant's Travel Was Not Suspicious

First, there was nothing noteworthy of Claimant's trip to Atlanta. In *Reid v. Georgia*, the Court held that a DEA agent lacked reasonable suspicion to stop a defendant. There, at the time of the stop, the agent knew that (1) the defendant flew into Atlanta from Fort Lauderdale, a source city for cocaine; (2) he arrived early in the morning, when police activity was believed to be at a low ebb; (3) he did not check his luggage; and (4) the defendant and his companion appeared to be attempting to hide the fact that they were together. The Court held that the first three of those facts "describe a very large category of presumably innocent travelers," and are not sufficient to supply reasonable suspicion. *Reid, 448 U.S. at 441*. Further, the last fact did not add enough to the totality of the circumstances to sufficiently establish reasonable suspicion that would justify the detention. *Id.*

*Reid* elucidates the principle that flying to a "drug source city" is not, in and of itself, suspicious. Flying to a drug source city warrants suspicion, if at all, only when ground time in a known drug source city was very short compared to flight time. See, e.g., *United States v. Ayarza,* 874 F.2d 647 at 652 ("Important to our decision is the district court's finding that [Appellant's] ground time in a known drug source city [less than 8 hours] was very short compared to his flight time [flying from New York to Seattle and on to Alaska]". This distinction and limitation exists because law enforcement officers have implicated nearly every state in the union and most major U.S. cities by purporting to identify them as "supply states" or "drug source cities."[4]

---

[4] To name a few: See *Reid v. Georgia*, 448 U.S. 438, 440, 65 L. Ed. 2d 890, 100 S. Ct. 2752 (1980) (agent identified Fort Lauderdale as drug source city*); United States v. Scarborough*, 128 F.3d 1373, 1378 (10th Cir. 1997) (Colorado deemed to be a "narcotics source state"); *United States v. Dennis*, 115 F.3d 524, 538 n.4 (7th Cir. 1997) (postal inspector identified as drug source states "the entire West Coast" as well as Texas, Florida, Arizona, and parts of Washington); *United States v. Jerez*, 108 F.3d 684, 686 (7th Cir. 1997) (law enforcement officer identified Texas, Florida, Arizona and California as drug source states); *United States v. Polk*, 97 F.3d 1096, 1097 (8th Cir. 1996) (identifying Los Angeles as a source city); *United States v.*

In the present case, Claimant traveled from San Francisco to Atlanta and then to Myrtle Beach, originally for three days, and then extended that ground time to five days. Therefore, even if probative, Claimant's ground time of five days (120 hours) was **not** short compared to his flight time (5-6 hours). In *Ayarza*, *supra,* there was only 8 hours of ground time on a trip from New York to Seattle and then on to Alaska (see 874 F.2d 647 at 648). Claimant's travel itinerary here warrants no suspicion and, to any common sense consideration, appears totally normal. Millions of travelers must routinely take 5-6 hour flights for 5-day trips.

Additionally, flying to Atlanta for three days without carry-on baggage but without checked baggage is something that is done by "a very large category of presumably innocent travelers," and adds nothing to establish the plaintiff's burden of reasonable suspicion. See *Reid*,

---

*Underwood*, 97 F.3d 1453 (6th Cir. 1996) (noting in unpublished table decision that Long Beach was a drug source city), cert. denied, 136 L. Ed. 2d 729, 117 S. Ct. 787 (1997); *United States v. Burgos*, 94 F.3d 849, 868 (4th Cir. 1996) (acknowledging that New York City is a source city for contraband drugs), cert. denied, 137 L. Ed. 2d 221, 117 S. Ct. 1087 (1997); *United States v. Fletcher*, 91 F.3d 48, 50 (8th Cir. 1996) (identifying Phoenix as drug source city), cert. denied, 137 L. Ed. 2d 338, 117 S. Ct. 1258 (1997); *United States v. McNeil*, 4 F.3d 987 (4th Cir. 1993) (recognizing New Jersey as drug source state in an unpublished table decision), cert. denied, 510 U.S. 1135, 127 L. Ed. 2d 422, 114 S. Ct. 1111 (1994); *United States v. Odum*, 72 F.3d 1279, 1282 (7th Cir. 1995) (identifying Houston as source city); *United States v. Johnson*, 64 F.3d 1120, 1125 (8th Cir. 1995) (noting that Chicago was a source city), cert. denied, 516 U.S. 1139, 133 L. Ed. 2d 891, 116 S. Ct. 971 (1996); *United States v. White*, 42 F.3d 42 F.3d 457, 460 (8th Cir. 1994) (identifying El Paso and Albuquerque as drug source cities); *United States v. McMurray*, 34 F.3d 1405, 1409 (8th Cir. 1994) (characterizing Oakland, California, and Portland, Oregon as drug source cities), cert. denied, 513 U.S. 1179, 130 L. Ed. 2d 1119, 115 S. Ct. 1164 (1995); *United States v. O'Neal*, 17 F.3d 239, 241 n.3 (8th Cir. 1994) (pointing out that Miami is deemed to be drug source city), cert. denied, 513 U.S. 960, 115 S. Ct. 418, 130 L. Ed. 2d 333 (1994); *United States v. Respress*, 9 F.3d 483, 487 (6th Cir. 1993) (recognizing Ontario, California, as drug source city); *United States v. Fifty-Three Thousand Eighty-Two Dollars In U.S. Currency, $ 53,082.00*, 985 F.2d 245, 247 (6th Cir. 1993) (characterizing Dallas as a drug source city); *United States v. Jennings*, 985 F.2d 562 (6th Cir. 1993) (denoting in unpublished table decision that Newark is a drug source city); *United States v. Ushery*, 968 F.2d 575, 579 (6th Cir. 1992) (identifying San Francisco as a drug source city), cert. denied, 506 U.S. 946, 121 L. Ed. 2d 301, 113 S. Ct. 392 (1992); *United States v. Galvan*, 953 F.2d 1098, 1102 (8th Cir. 1992) (labeling San Diego as a drug source city); *United States v. Flowers*, 912 F.2d 707, 708 (4th Cir. 1990) (identifying Detroit as a drug source city), cert. denied, 501 U.S. 1253, 115 L. Ed. 2d 1060, 111 S. Ct. 2895 (1991).

1    *448 U.S., at 441.*  Traveling without checking bags, especially on a three or five day trip such as
2    the one Claimant was on, is simply not suspicious.

3         Plaintiff may point to the fact that Claimant happened to pay for his ticket in cash as
4    being suspect. However, this is insufficient, alone or in combination with the other circumstances
5    of Claimant's travel, for a finding of reasonable suspicion. In *United States v. Eustaquio*, 198
6    F.3d 1068 (8th Cir. 1999), the Eighth Circuit Court of Appeals held that an officer lacked
7    reasonable suspicion for an investigative detention when a defendant appeared nervous, had
8    traveled from a drug source city without having checked any luggage, had bought a one-way
9    airline ticket **with cash**, and nobody met her at the airport,[5] because "Too many people fit this
10   description for it to justify a reasonable suspicion of criminal activity." Even in cases when
11   purchasing tickets with cash has been among a myriad of factors supporting reasonable
12   suspicion, it is only considered noteworthy in the sense that business travelers might often
13   purchase airline tickets with credit cards or checks to maintain a receipt for tax purposes, while
14   drug couriers would not.[6] And here, as will be discussed *supra*, Claimant was apparently
15   traveling to Myrtle Beach for pleasure, a fact that lessens any probative weight the sole fact of
16   paying for an airline ticket in cash may have.

17        Plaintiff may also point to the fact that Claimant has arrests and convictions for
18   possession of small amounts of marijuana. However, in 2006 alone, there were 829,625 arrests
19   for marijuana offenses in the United States, and of those, approximately 89 percent (738,915
20   Americans) were charged with possession only. See Federal Bureau of Investigation's annual
21   Uniform Crime Report, viewed at http://www.fbi.gov/ucr/cius2006/index.html. Claimant submits
22   that if the existence of prior arrests or convictions for **possession** of small amounts of marijuana

23   _____

24   [5] The defendant in *Eustaquio* (1) exhibited nervous movement and a straight-ahead gaze; (2)
25   chose a direct path to leave the terminal; (3) did not having any checked luggage; (4) arrived
     from a source city for narcotics trafficking; (5) made a same-day purchase of a one-way airline
26   ticket with cash; (6) there were no friends and family meeting defendant at the airport; (7) she
     did the opposite of what the stopping officer asked; and (8) exhibited a bulge under her clothing.
27   See 198 F.3d 1068 at 1071.

28

-16-

was sufficient for reasonable suspicion, then millions of innocent Americans would be "subject to virtually random seizures were the Court to conclude that as little foundation as there was in this case could justify a seizure." *Reid, supra,* at 894. Moreover, persons with prior convictions for **possession** of small amounts of marijuana cannot be reasonably and automatically suspected of being narcotics **traffickers**.

S/A Byrd and TFA Maes approached Claimant without reasonable suspicion. The fact that S/A Byrd, in the investigative report, referred to the initial interaction with Claimant as a "consensual encounter" further supports this contention. And as we shall see, *supra,* Claimant's behavior and the agents' investigation ensuing after he arrived in San Francisco creates a totality of circumstances that cannot, as a matter of law, be grounds for reasonable suspicion of drug trafficking.

### B. Claimant's Behavior and Responses Should Have Quelled Any Minimal Suspicions That Agents Previously May Have Had, and The Consensual Encounter Should Have Ended When Claimant Expressed His Desire To End It

Assuming, arguendo, that S/A Byrd and TFA Maes, had reasonable grounds for **any** suspicion of Claimant before his arrival in San Francisco on May 30, 2007, those minimal (at best) suspicions should have been dispelled by Claimant's behavior and his responses in the consensual encounter.

Upon arriving, DEA task force agents "maintained foot surveillance" of claimant throughout the entire airport. Claimant was talking on a cell phone and had two pieces of luggage in tow. Nothing unusual about his appearance, demeanor, or behavior was noted as being out of the ordinary. Further, Claimant's interaction and responses during the consensual encounter should have quelled any minimal suspicion that S/A Byrd or TFA Maes had prior to that point in time.

---

[6] See, e.g. *United States v. $242,484.00*, 351 F.3d 499, 509, 510 (11th Cir. 2003); *United States v. $121,100.00*, 999 F.2d at 1507 (citing *United States v. Sokolow*, 490 U.S. 1, 8-9, 109 S. Ct. 1581, 1586, 104 L. Ed. 2d 1 (1989)).

1    In *United States. v. Ayarza, supra,* 874 F.2d 647, in finding that there was reasonable

2    suspicion for a stop, the Court of Appeals stated, "Also important is the fact that Appellant

3    offered an implausible excuse when asked about his travel arrangements. *Cf.* [*United States v.*

4    *Erwin, 803 F.2d* [1505 (9th Cir. 1986)] *at 1510-11* (explanation for weaving through airport

5    implausible); *see also Florida v. Rodriguez, 469 U.S. 1, 6, 105 S. Ct. 308, 83 L. Ed. 2d 165*

6    *(1984)* (per curiam) (suspects contradicted themselves when questioned about their identities)."

7    *United States v. Ayarza,* 874 F.2d 647, 652 (9th Cir. 1989).  Such suspicious behavior is not

8    present here: agents began the consensual encounter by asking for identification from Claimant

9    and Claimant complied by presenting a valid driver's license that confirmed his identity and that

10   he was a resident of California. This initial fact **reduces** suspicion. See *United States v. $*

11   *67,220.00,* 957 F.2d 280, 285 (6th Cir. 1992) (holding that traveling under one's own name

12   reduces suspiciousness of travel). Further, agents knew that Claimant was coming from Atlanta

13   and that he had been in Myrtle Beach, SC over the weekend. Claimant's explanation for his

14   travel itinerary was that he was coming from Atlanta and had also flown to Myrtle Beach, SC

15   over the weekend to attend the "Black Motorcycle Weekend." This confirmed what agents knew

16   at the time and, thus, could not arouse suspicion in the mind of a reasonable officer, as the

17   corroboration clearly demonstrated that Claimant was not lying to S/A Byrd and TFA Maes.

18   Next, and as mentioned *infra*, Claimant's responses that he was in Myrtle Beach for a

19   weekend event, presumably for pleasure cuts against any minimal suspicion that paying for a

20   ticket in cash, standing alone, would have.

21   Finally, when asked about possessing illegal narcotics or a large amount of currency,

22   Claimant **admitted** to having approximately $25,000 dollars in cash. It would be wholly absurd

23   to hold that because claimant admitted to possessing cash, the scales tip in favor of the

24   government and suffice to establish reasonable suspicion. Aside from encouraging a policy of

25   punishing any traveler for being forthcoming and telling the truth to law enforcement, the

26   admittance should have quelled suspicions in the mind of a reasonable officer, not obviate the

27   need for more investigation.  It demonstrates to a **reasonable** law enforcement agent that

28

-18-

1    Claimant believed he had nothing to hide and suggests that claimant was not involved in any

2    illegal activity. See *United States v. $242,484.00*, 351 F.3d 499, 512 (11th Cir. 2003)

3    ("Stanford's traveling under her own name and her honesty about her possession of the currency

4    and its amount go a long way to easing any suspiciousness raised by some evasiveness with the

5

6    agents.")

7        Noteworthy is *U.S. v. $ 191,910.00 in U.S. Currency*, 16 F.3d 1051 (9th Cir. 1993),

8    where, in finding that there was not probable cause for forfeiture pursuant to the federal drug

9

10   statutes, this circuit court discussed the probative value of a traveler who admitted to having

11   $15,000 to $20,000 dollars in U.S. currency. The Court reasoned that such amounts are not

12   indicative of drug trafficking when the traveler admitted to having that amount of currency and

13   airport security observed numerous bundles of what looked like currency. Even though the

14   claimant in *U.S. v. $ 191,910.00 in U.S. Currency* originally denied having any currency, then

15

16   changed the amount; then wasn't sure about the amount, who he got it from or how much of it

17   was his, the Court still stated "individually or collectively" such factors were **not** "sufficiently

18   probative of criminal wrongdoing **and even less so of drug activity.**" (emphases added). *Id.* at

19

20   1072.

21       An admittance of carrying $25,000 in cash is, alone, is insufficient to raise a suspicion of

22   illegal activity, and certainly not a reasonable suspicion of illegal **drug** activity. Moreover, the

23   other factual circumstances here, the complete absence of any suspicious conduct on the part of

24   Claimant, counterbalanced even any minimal suspicion carrying cash might have aroused in the

25   mind of a reasonable law enforcement agent.  As the *$191,910* court stated, the traveler "could

26   just as easily have been a distributor of 'street money' in a political campaign." *Id.* at 1072. Here,

27   at the same time Claimant told agents that he was carrying currency, Claimant also mentioned

28

-19-

that his family was a long standing prominent **political** family in San Francisco, and possibly

mentioned that one of his relatives is a current supervisor. Agents knew this, did not bother to

ask about the source of the funds, and knew nothing that would contradict the legitimate source

of the funds, but decided to seize and detain claimant's luggage anyway, without any reasonable

suspicion that would justify such a detention. Any suspicion that existed in the minds of S/A

Byrd and TFA Maes was not objectively reasonable, and should have been quelled by the honest

and unequivocal information provided by Claimant.

### C. The Totality of the Circumstances Show that Agents Lacked A Reasonable and Articulable Suspicion of Illegal Activity

Claimant was returning from a weekend trip that was not noteworthy. S/A Byrd and TFA

Maes apparently found it suspicious that he had paid for his ticket in cash and that Claimant had

prior convictions for possession of small amounts of marijuana. When approached by two federal

agents, Claimant agreed to answer their questions. Claimant's responses and explanations were

truthful, as the agents' knew, since the responses corroborated the information that agents already

had at the time, and were consistent with completely innocent and leisurely travel. Claimant's

behavior was normal and he readily admitted to possessing currency when asked. No reasonable

officer would believe that Claimant's luggage contained narcotics or proceeds traceable to

narcotics nor would any reasonable officer seize his luggage on such weak circumstantial

evidence.  Claimant's Fourth Amendment rights were violated.

**IV.  EVEN IF AGENTS HAD INITIAL REASONABLE SUSPICION TO TEMPORARILY DETAIN THE LUGGAGE, AGENTS' LACK OF DUE DILIGENCE IN SECURING A DOG SNIFF RENDERS THE SEIZURE ILLEGAL UNDER *PLACE* AND *$191,910.00***

Even if this court finds that agents had enough reasonable suspicion to temporarily detain

Claimant's luggage, "In order for the fruits of this investigatory detention [of luggage] to be

-20-

admissible, [] the seizure itself must be conducted in a reasonable manner. A seizure is reasonable if: (1) the length of the detention is sufficiently short, **and** (2) government agents act with diligence in pursuit of their investigation." *U.S. v. $191.910, supra,* 16 F.3d at 1059 (emphasis added) (internal citations omitted). Here, like in *Place* and *U.S. v. $191.910,* "the limitations applicable to investigative detentions of the person should define the permissible **scope** of an investigative detention of the person's luggage on less than probable cause. Under this standard, it is clear that the police conduct here exceeded the permissible limits of a *Terry*-type investigative stop." *Place* 462 U.S. 696 at 709 (emphasis added).

The *$191,910* Court found that the detention of a traveler's luggage was "an unreasonable search **both** because of the length of the detention and because of the government's lack of diligence in failing to act reasonably to obtain the presence of a police dog at the airport once the agents knew Morgan was coming." 16 F.3d at 1062.

First, "the brevity of the invasion of the individual's *Fourth Amendment* interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion." *Place*, 462 U.S. at 709. In the present case, there is no information in the DEA investigative report that indicates how long it took before the dog was finally brought to the Claimant's location and sniffed the luggage. Therefore, the length of detention, alone, may indeed invalidate the seizure in the present case.

Regardless of the absolute length of the detention, "in assessing the effect of the length of the detention, we take into account whether the police diligently pursue their investigation." *Place*, at 462 U.S. at 709. The rule is clearly stated in *U.S. v. $191,910*: "Where ... government agents are at the airport awaiting a particular individual who they know is coming on a particular

-21-

flight and whom they suspect of drug trafficking, they should arrange for a dog to be sent to the appropriate location as soon as they decide to meet the plane themselves." 16 F.3d at 1061.

Here, like in *U.S. v. $191,910*, the government agents "exhibited 'a distinct lack of diligence' in failing to take reasonable measures to have a drug-sniffing dog available." 16 F.3d at 1059.

The *$191,910* court explicitly rejected the government's argument "that there is no legal requirement that the police keep a drug dog stationed at the airport gate." *Id.* at 1061. Generally, agents "need not have a dog sitting continuously at the gate, the luggage area, or the nearby location where the search will be conducted," (*Id.* at 1062) but the Court held that when agents know ahead of time that a particular suspect will be arriving on a particular flight at a particular time, as they did here, then agents should have had a drug sniff dog already present at the gate or nearby where the search could have been conducted to minimize the intrusion on Claimant's Fourth Amendment interests. "Every minute that the detention continues exacerbates the intrusion on the luggage owner's liberty." *Id.* at 1060 (Citing *United States v. LaFrance*, 879 F.2d 1, 9 (1st Cir. 1989) ("Time *qua* time is of concern in the luggage seizure cases because of the concomitant impingence on liberty.")). "Although government agents need not pursue the line of investigation that a reviewing court finds, in hindsight, to have been the most expeditious possible, they must not unreasonably fail to recognize or pursue avenues which would lessen the length of the detention." *Id.* at 1061. (Citing *United States v. Holzman,* 871 F.2d 1496, 1501 (9th Cir. 1989)).

In the present case, like in *$191,910*, Claimant was suspected from the day before his arrival. Moreover, numerous unnamed agents conducted surveillance on the gate at which Claimant was to arrive nearly 30 minutes before his flight was expected to arrive. Agents

observed Claimant walk through the entire airport, through the secure area and eventually out to the curbside waiting. TFA Mahon could have been at the gate around the time of arrival, or agents could have stopped Claimant shortly after arriving. Instead, agents waited for Claimant to walk through the entire airport, then outside of the airport, question him for several minutes until his ride arrived, and only then did they **call** for a drug sniff dog. There is not even an indication of whether agents knew or made sure that a drug sniff dog would be nearby or how long would take for the dog to arrive. The agents' lack of diligence in failing to act "reasonably to obtain the presence of a police dog" invalidated the detention of Claimant's luggage. *U.S. v. $191,910,* 16 F.3d at 1062. See also, *United States v. $ 124,570 US Currency*, 873 F.2d 1240, 1248 n.9 (9th Cir. 1989) (It was "particularly troubling" under *Place*, when DEA agents "had made no arrangements to obtain a dog prior to seizing Campbell's briefcase," where the DEA agent knew Campbell was coming and met Campbell's plane).

Therefore, like in *Place* and *$191,910*, agents "went beyond the **narrow authority** possessed by police to detain briefly luggage reasonably suspected to contain narcotics." *U.S. v. Place,* 462 U.S. at 710 (emphasis added).

## V.    ALL EVIDENCE OBTAINED AS A RESULT OF AN UNLAWFUL WARRANTLESS SEARCH IS THE "FRUIT OF THE POISONOUS TREE" AND MUST BE SUPPRESSED

The exclusionary rule operates to prevent the use of evidence obtained as the indirect product of unlawful conduct in the same manner that it precludes the use of evidence directly obtained by improper conduct. *Segura v. United States*, 468 U.S. 796, 804 (1984). This principal has become established as the "fruit of the poisonous tree" doctrine. *Wong Sun v. United States*, 371 U.S. 471 (1963). In the instant case, law enforcement conducted an illegal

warrantless detention and search of claimant's luggage.  Accordingly, all evidenced adduced as a result of the Fourth Amendment violations must be suppressed.

<u>CONCLUSION</u>

For the foregoing reasons, it is respectfully requested that this Court find that Claimant's Fourth Amendment rights were violated, and accordingly, exclude all evidence and fruits obtained as a result of the illegal search and seizure of Claimant's luggage.

Dated: 19 June 2008

Respectfully submitted,


<u>S/DAVID M. MICHAEL            </u>
DAVID M. MICHAEL
Attorney for Claimant FRANK JOSEPH ALIOTO

## <u>CERTIFICATE OF ELECTRONIC FILING</u>

The undersigned hereby certifies that, on 20 June 2008, he caused to be electronically

filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a

notice of electronic filing to the following:

Susan B. Gray CSB 100374
Office of the U.S. Attorney
450 Golden Gate Avenue
San Francisco CA 94102
Susan.B.Gray@usdoj.gov


S/DAVID M. MICHAEL
DAVID M. MICHAEL