DAVID M. MICHAEL, SBN 74031
LAW OFFICES OF DAVID M. MICHAEL
101 California Street, Suite 2450
San Francisco, CA 94111
Telephone:   (415) 946-8996
Facsimile:    (877) 538-6220
E-mail:        dmmp5@aol.com

EDWARD M. BURCH, SBN 255470
12 Oakwood St. #8
San Francisco, CA 94110
Telephone: (415) 518-0498
Facsimile: (877) 767-3821
E-mail: emikeb11@aol.com

Attorneys for Claimant
FRANK JOSEPH ALIOTO

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

APPROXIMATELY $61,505.00
IN UNITED STATES CURRENCY,

        Defendant.

_____/

FRANK JOSEPH ALIOTO,

        Claimant.

_____/

No. C 07-5413 MMC

**CLAIMANT'S REPLY
MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS
EVIDENCE**

i

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITES ........................................................................................ iii

STATEMENT OF ISSUES ........................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 1

ARGUMENT ........................................................................................................ 2

I. Agents Needed Reasonable Suspicion of Drug Trafficking
in Order To Detain Claimant and/or His Luggage .......................................... 3

II. Plaintiff Cannot Sustain Its Burden of Showing
That Reasonable Suspicion Existed at the Time Of Seizure .......................... 5

   A. Certain Factual Allegations of Agent Byrd
Should Not Be Considered By this Court .......................................................... 5

   B. The Hearsay and Triple Hearsay Evidence
of Unidentified Delta Airlines Employees
Should Not Be Considered By This Court .......................................................... 9

   C. Plaintiff Cannot Satisfy Their Burden
of Demonstrating Reasonable Suspicion of Drug Trafficking .......................... 10

     i. The Present Facts, Individually,
Are Not Sufficient To Establish Reasonable Suspicion .............................. 10

     ii. The Present Facts, in the Aggregate,
Are Not Sufficient To Establish Reasonable Suspicion .............................. 13

IV. The Detention of Claimant's Luggage Fails under *Place* .......................... 16

CONCLUSION .................................................................................................... 16

CERTIFICATE OF SERVICE ................................................................................ 17

//

//

//

ii

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

4

*Reid v. Georgia*,
448 U.S. 438 (1980)....................................................................................10

5

6

*Terry v. Ohio*,
392 U.S. 1 (1968).......................................................................................10

7

8

*Neill v. Gibson*,
278 F.3d 1044 (10th Cir. 2001) ...............................................................9

9

10

*United States v. $ 191,910.00 in United States Currency*,
16 F.3d 1051 (9th Cir. 1993) ................................................................5, 13

11

12

*United States v. $ 242,484.00 in United States Currency*,
351 F.3d 499 (11th Cir. 2003) ...................................................................14

13

14

*United States v. Ayarza*,
874 F.2d 647 (9th Cir. 1989) ....................................................................10

15

16

*United States v. Campbell*,
843 F.2d 1089 (8th Cir. 1988) ..................................................................14

17

*United States v. Chavez-Valenzuela*,
2001 U.S. App. LEXIS 28326 (9th Cir. 2001) .........................................12

18

19

*United States v. Eustaquio*,
198 F.3d 1068 (8th Cir. 1999) .............................................................13, 14

20

21

*United States v. Gregoire*,
425 F.3d 872 (10th Cir. 2005) ....................................................................4

22

23

*United States v. Lee*,
73 F.3d 1034 (10th Cir. 1996) ...................................................................10

24

25

*United States v. Reeves*,
798 F. Supp. 1459 (E.D. Wash. 1992)......................................................7, 8

26

*United States v. Ortiz*,
422 U.S. 891 (1975)....................................................................................14

27

28

*United States v. Place*,
524 U.S. 321 (1998).......................................................1, 2, 3, 4, 5, 16

*United States v. Sokolow*,
490 U.S. 1 (1989) ..................................................................................10, 11

*United States v. Wald,*
216 F.3d 1222 (10th Cir. 2000) ...................................................................11

*United States v. West*,
219 F.3d 1171, 1179 (10th Cir. 2000) .........................................................11

*United States v. Williams*,
271 F.3d 1262, 1268-69 (10th Cir. 2001) ....................................................12

*United States v. Wood,*
106 F.3d 942 (10th Cir. 1997) .............................................10, 11, 12, 13, 15

*Western Spring Serv. Co. v. Andrew*,
229 F.2d 413 (10th Cir. 1956) .......................................................................9

## Constitutional Provisions

Fourth Amendment .................................................................. *passim*

iv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STATEMENT OF ISSUES[1]

In its opposition to Claimant Frank Joseph Alioto's motion to suppress all evidence seized and the fruits thereof, from the seizure and search of his person and his luggage on or about May 30, 2007, at the San Francisco International Airport, Plaintiff impermissibly attempts to argue evidence that is inappropriate and inadmissible in relation to the Fourth Amendment issues presented.  Even if the aforementioned evidence is considered by the Court, Claimant submits that Drug Enforcement Agency (DEA) agents Willie Byrd and Steve Maes lacked probable cause and lacked reasonable and articulable suspicion of drug trafficking necessary to justify the detention of his person and/or his luggage on said date.

Finally, and assuming, arguendo, that this Court finds sufficient justification under the Fourth Amendment for the initial stop of Claimant and the detention of his luggage, the search of claimant's luggage fails under *United State v. Place*.  Therefore, the government will not be able to satisfy its burden under the Fourth Amendment, requiring suppression of the evidence seized.

BRIEF PROCEDURAL BACKGROUND

On May 2, 2008, Plaintiff served on Claimant, United States Response to Claimant's first set of Request for Production of Documents, which included the DEA Investigative Report prepared by agent Byrd on May 30, 2007 (See *Exhibit A*, attached herein). Claimant filed his Memorandum of Points and Authorities in Support of Motion to Suppress Evidence (Motion to

---

[1] Claimant and Plaintiff have already filed detailed accounts of the factual events leading to the seizure and search, so that information is not repeated here. However, in Plaintiff's Statement of Facts, Plaintiff includes quite detailed accounts of the events that transpired after the search and seizure of Claimant's luggage, so it should be noted that Plaintiff holds two fundamental misconceptions regarding the proper Fourth Amendment analysis at hand. First, evidence obtained after an allegedly illegal search should not be considered in evaluating the reasonableness of any police search. Second, the standards in Fourth Amendment jurisprudence

1

Suppress) on June 16, 2008. On July 18, 2008, Plaintiff filed United States' Response to Motion to Suppress (U.S. Opposition)[2] along with Declaration of Special Agent Willie Byrd in Supportof United States' Response to Motion to Suppress (Byrd Declaration).

<u>ARGUMENT</u>

**I.    Agents Needed Reasonable Suspicion of Drug Trafficking in Order To Detain Claimant and/or His Luggage**

Plaintiff expends considerable time in its opposition arguing that "the entire encounter between agents and Alioto was consensual" (U.S. Opposition, 10:16-18) and suggesting that agents didn't seize Claimant's person, thereby begging the conclusion that the encounter does not implicate the Fourth Amendment. This argument is unsupported on the facts and the law, and its conclusion is incorrect.

Plaintiff contends that, "[t]he consensual nature of this encounter did not change when the officers asked to search Alioto's bag or when the agents told him that they were going to **detain** his bag for a dog sniff." See U.S. Opposition 9:15-16 (emphasis added). This is simply wrong. At the point in time when the agents asked for consent to search Claimant's bag, Claimant clearly and unequivocally *refused* to give *consent*. See U.S. Opposition 4:15-16. Moreover, Claimant unequivocally expressed his *desire to end the consensual encounter*, whereafter, the agents told Claimant that they had reasonable suspicion of drug trafficking, and informed Claimant that they were *seizing* his luggage. Such facts cannot seriously be argued to be consensual in nature.

As cited in Claimant's Memorandum of Law in Support of Motion to Suppress ("Motion to Suppress"),

Particularly in the case of detention of luggage within the traveler's immediate possession, the police conduct intrudes on both the suspect's possessory interest in

---

are those of an objective reasonable officer standard and a reasonable person in Claimant's position, not the subjective beliefs of the individuals involved.

[2] The hard copy of U.S. Opposition, served on Claimant, differs slightly in format than the version which was filed electronically, so it should be noted that page and line references are made to that document, as it appears electronically filed.

2

his luggage as well as his liberty interest in proceeding with his itinerary. The person whose luggage is detained is technically still free to continue his travels or carry out other personal activities pending release of the luggage [...but] **such a seizure can effectively restrain the person** since he is subjected to the possible disruption of his travel plans in order to remain with his luggage or to arrange for its return. Therefore, when the police seize luggage from the suspect's custody, we think **the limitations applicable to investigative detentions of the person should define the permissible scope of an investigative detention of the person's luggage on less than probable cause**.

*United States v. Place*, 462 U.S. 696, 708-709 (1998) (emphases added).

Plaintiff has cited no case or statute to refute the above-cited clear authority. Plaintiff makes a lackluster and unsupported argument that Claimant's travel plans were somehow not disrupted because he did not have a plane to catch and lived in the area. See U.S. Opposition, 10:7. To the contrary, Claimant was subjected to the "disruption of his travel plans in order to remain with his luggage or to arrange for its return." See *id*. The fact that a traveler is returning from a trip and lives in the area of seizure does not negate that traveler's reasonable and logical desire to retain his own luggage and go about his business free from intrusions of government agents, and Plaintiff cites no authority to refute that principle.

Plaintiff argues that "a reasonable person in Alioto's position would have felt free to leave, decline to answer agent Byrd's questions, or otherwise terminate the encounter." See U.S. Opposition 10:11-12. As support, Plaintiff erroneously argues that the supposed non-threatening manner in which agents approached and questioned Claimant allows them to seize detain his person and/or his luggage without reasonable suspicion. That assertion, even if true, does nothing to relieve agents and Plaintiff of their clear duty to demonstrate reasonable suspicion of drug trafficking before they detain Claimant's luggage.

Plaintiff argues that, "most telling in evaluating this argument that Alioto has not even alleged that he believed he was not free to leave. He has filed no declaration ... " U.S. Opposition 10:14-15. Such *subjective* evidence is actually not at all telling because "[t]he issue is whether law enforcement conduct **as perceived by a reasonable person** would communicate that the person was not free to decline law enforcement requests or end the encounter." *United*

3

1  *States v. Gregoire,* 425 F.3d 872, 879 (10th Cir. 2005) (emphases added). A reasonable person,

2  after declining to continue a consensual encounter, clearly expressing his desire to terminate the

3  encounter and his desire to leave, and then being told that his luggage is being seized from his

4  possession on alleged suspicion of drug trafficking, is the exact same person as described in

5  *Place* and the same limitations applicable to an investigative detentions of Claimant applies to

6  his luggage.  That luggage was therefore seized for purposes of the Fourth Amendment.

7         In other words, even if a reasonable person in Claimant's position would have felt free to

8  leave, the agents still needed reasonable suspicion to detain his luggage. Therefore, splitting hairs

9  about whether Claimant's person or his luggage was seized is superfluous because, in either case,

10  Plaintiff's burden is to demonstrate the existence of reasonable suspicion of drug trafficking

11  justifying the seizure of Claimant's luggage.

12         Plaintiff refers to Claimant as "defendant" and qualifies Claimant's well-supported

13  argument that his person and luggage were seized as "half-hearted." See U.S. Opposition, 10:16.

14  Yet the law is crystal clear: "a police officer may **briefly detain luggage** for investigation **if he**

15  **has a reasonable, articulable suspicion** that the luggage **contains narcotics**." *U.S. v. $*

16  *191,910.00 in U.S. Currency*, 16 F.3d 1051, 1059 (9th Cir. 1993) (citing *Place*, *supra,* 462 U.S.

17  at 706) (emphases added).  Plaintiff cannot seriously argue that Claimant declined consent for

18  agents to **search** his suitcase, but somehow at the same time gave agents consent to **detain** his

19  suitcase. Agents here clearly detained Claimant's luggage for investigation of alleged illegal

20  narcotics trafficking, and thus must show they did so with a reasonable and articulable suspicion

21  of that criminal activity.

22  **II.    Plaintiff Cannot Sustain Its Burden of Showing That Reasonable Suspicion Existed
       at the Time Of Seizure**
23         **A.    Certain Factual Allegations of Agent Byrd Should Not Be Considered By this
              Court**

24  The DEA investigative report, prepared by S/A Willie Byrd on May 30, 2007 - the day

25  after his interaction with Claimant - memorialized in great detail the investigation and encounter

26

27

28

                                          4

of Claimant in late May of 2007 and is attached as *Exhibit A*, herein.  On July 18, 2008[3], along with its response to Claimant's motion to suppress, Plaintiff filed and submitted the Declaration of Agent Byrd. Plaintiff then curiously argues that because Claimant did not attach agent Byrd's investigative report of May 30, 2007, "[t]only facts before this court are those contained in the verified complaint and the attached Declaration of Special Agent Willie Byrd." See U.S. Opposition 1: n.2.

In any event, certain factual allegations, included in the July 16, 2008 Declaration of Agent Byrd, are suspiciously absent from both the investigative report of agent Byrd *and* the verified complaint of October 23, *2007*, and should be disregarded by this Court.[4]

In his declaration at page 2: 6-8, agent Byrd states that "The CI also told me that Alioto had an extensive travel history of round trips to and from Atlanta from the Bay Area. Alioto usually paid cash for a first class ticket and had a quick turn around time." Plaintiff and agent Byrd now cite this "fact" as contributing to agents' reasonable suspicion of Claimant's alleged drug trafficking. Yet, Agent Byrd's initial investigative report discusses what agent Byrd was told of Claimant's "suspicious" travel, but makes no mention whatsoever, of "an extensive travel history" to Atlanta. The report does mention other reasons why the agent, and/or the unnamed person identified by the agent as a confidential informant,  believed Claimant's travel was suspicious, but an extensive travel history to Atlanta with tickets paid by cash is not one of them. It is reasonable to expect that when he prepared such a thorough multi-page report the day after the encounter, alleging that he detained luggage on reasonable suspicion and had probable cause for forfeiture, an experienced agent such as agent Byrd would have made some mention of this extensive travel history to a "significant drug distribution hub," especially when in that investigative report he discusses that part of his suspicion was that Claimant was traveling to this

---

[3] The date of execution of S/A Byrd's Declaration reads July 16, **2007**. Claimant herein assumes that this was simply a typo, and that the date that S/A Byrd actually provided the information and signed this document, in support of an opposition motion drafted in July of 2008, was sometime on or about July 16, **2008**.

1   drug hub in this instance. Such evidence is already at least somewhat unreliable as it is based on

2   hearsay of an unnamed informant, but the fact that the allegation was mentioned by agent Byrd

3   over one year after the encounter should make this allegation entirely incredible and inadmissible

4   in the present motion. [5]

5       More egregious, is that agent Byrd's declaration, at p. 27-28, that "Alioto appeared

6   nervous to me and his hands were shaking" is also never mentioned in either the investigative

7   report or the complaint for forfeiture.  It seems reasonable to assume that agent Byrd, in

8   preparing an investigative report in which he claims he had reasonable suspicion of a crime,

9   would include that a suspect appeared nervous and that agent Byrd observed said suspect's hands

10  shaking. In fact, agent Byrd did indeed include such information in his investigative report of

11  Claimant regarding an subsequent encounter with Claimant on August 16, 2007, at Oakland

12  Airport. See *Exhibit B*, attached herein. In said report, agent Byrd notes specifically that "Alioto

13  displayed nervous behavior by not responding to his name, looking forward, and walking at a

14  fast pace." *Exhibit B*, 0005. Then, later in that same report, agent Byrd cites "nervous behavior"

15  as among the factors in the "totality of circumstances" that led him to believe he had seized

16  money that was possible proceeds of narcotics transactions. See *Exhibit B*, 0010.  Perhaps agent

17  Byrd confused the circumstances and details of the stop on May 30, 2007 with those of the stop

18  of August 16, 2007 when he attempted to recollect the details of the May 30th encounter over a

19  year after the former encounter with Claimant. In any case, the allegation is less than credible, at

20  best. Particularly troubling is that agent Byrd's declaration that Claimant was nervous during the

21  May 30th encounter came only after Claimant filed his motion to suppress, in which, underline based on

22  the detailed facts in the investigative report, Claimant stated  "[n]othing unusual about

23  [Claimant's] appearance, demeanor, or behavior was noted as being out of the ordinary." See

24  Claimant's Motion to Suppress 17: 10-12.

25  _____

26  [4] By arguing that these facts should not be considered in the present motion, Claimant does not
    concede that these facts are at all incriminating, but challenges their admission knowing that

27  Plaintiff argues that these facts are support for its warrantless search and seizure.

28  [5] Agent Byrd's new recollections must be solely from his memory because, in discovery, the
    government provided no other reports or notes by Agent Byrd, other than his initial report.

In *United States v. Reeves*, 798 F. Supp. 1459, 1470 (E.D. Wash. 1992), the court found that the inconsistency of officers' accounts regarding the phrasing of how the defendant was asked and responded to a request for consent was enough to find that no consent was given and thereby negated the alleged lawfulness of a luggage detention in the context of a Fourth Amendment motion to suppress:

> Both Officer Erni and Trooper Ladines testified on the issue of whether the Defendant specifically consented to a search of the briefcase. Officer Erni testified to the following: "We asked [the Defendant] if it would be okay if we looked inside of [his briefcase]. He didn't seem to mind if we did. He didn't say, no, I don't want you to look in there." Trooper Ladines testified that "we asked him whose briefcase it was, and then I believe we said can we look inside it, and he said, no -- I'm sorry -- he said go ahead."

> The fact that the Defendant did not respond to the request for consent has little, if any, bearing on whether consent was actually given. **As for Trooper Ladines's testimony, it is not only inconsistent with Officer Erni's, it indicates a certain amount of indecisiveness on behalf of Trooper Ladines, which reduces the credibility of his testimony on the subject.** As this was the only evidence presented on the issue, the court concludes that the Government has failed to meet its burden in establishing that the Defendant specifically gave his oral consent to a search of the briefcase at the time it was discovered."

> *Id.* at 1470 (emphases added).

Here, agent Byrd makes no mention of Claimant's alleged nervous appearance and extensive travel history to Atlanta in his earlier and more reliable investigative report. Plaintiff now uses these allegations to support a finding of reasonable suspicion.  The fact that agent Byrd alleges that these things were told or observed by him, for the first time, over a year after the encounter, and in response to motion which argues that agents lacked reasonable suspicion, indicates, a certain amount of indecisiveness on behalf of agent Byrd, at best. His credibility is seriously reduced on those issues, and perhaps significantly reduced on the rest of the allegations as well.  Like in *Reeves, supra*, since his inconsistent declaration is the only evidence the government has presented to prove those particular facts, the allegations of Claimant's nervousness and extensive travel history to Atlanta should not be considered as supported facts for the purpose of this motion to suppress.

7

Therefore, it is respectfully requested that this Court disregard the new allegations that appear in Agent Byrd's declaration of July 16, **2008**, and only accept the allegations included in the investigative report of May 30, **2007** as facts available to the agent at the time of seizure. At the very least, agent Byrd should be required testify in person before this court, before his now questionable allegations and statements regarding the hearsay evidence of an unnamed confidential informant and supposedly incriminating observations of Claimant, be considered in the present motion. To allow S/A Byrd's conveniently late and suspicious change in allegations of Claimant's investigation and alleged behavior is to invite court sanctioned police misconduct and can only lead to a complete vitiation of the Fourth Amendment and its principles.

    **B.**    **The Hearsay and Triple Hearsay Evidence of Unidentified Delta Airlines Employees Should Not Be Considered By This Court**

The only evidence submitted by the government is the first-party investigative report and/or declarations of agent Byrd and the complaint of forfeiture based on agent Byrd's assertions. As such, those documents contain inadmissible hearsay as to any statements by unnamed Delta airlines employees. *Neill v. Gibson*, 278 F.3d 1044, 1056 (10th Cir. 2001), also citing *Western Spring Serv. Co. v. Andrew*, 229 F.2d 413, 419 (10th Cir. 1956) (holding, in civil action, that attorney's affidavit concerning what other person told attorney was hearsay, entitled to no consideration). Nothing prevented Plaintiff from presenting an affidavit of any Delta airlines employee. The government has failed to do so.

Moreover, even if the statements of whom agent Byrd refers to as a confidential informant (the unidentified person with access to Delta airlines records and employees) are given any weight, certainly the hearsay upon hearsay statements of other Delta airlines employees should not be afforded any consideration in evaluating Claimant's constitutional rights. Agent Byrd declares that the unidentified confidential informant said that Claimant had a "documented" incident with a Delta Airline front counter agent which took place in June 2006. The tale continues that when Claimant was told he must check a certain piece of luggage, he asked to speak with a supervisor. The supervisor then allegedly told the front counter agent that Claimant had tried to bribe the supervisor, and the supervisor apparently, in turn, relayed this story to the unidentified confidential informant.

Such triple hearsay has no place in any judicial proceeding, let alone one that determines the constitutional rights of any citizen of this county. In that the government seeks here to justify the present detention with inadmissible hearsay and proffers, Claimant requests that this Court only consider the admissible evidence submitted by Plaintiff as to those events, consisting of the statements of agent Byrd to which he has personal knowledge, or, alternatively, conduct an evidentiary hearing on this issue so that the percipient witnesses may testify and any relevant documentary evidence may be admitted for the Court's consideration.

### C.    Plaintiff Cannot Satisfy Their Burden of Demonstrating Reasonable Suspicion of Drug Trafficking

Plaintiff argues that even if some of Claimant's actions viewed alone are consistent with wholly innocent activity, "when taken together, <u>all</u> of the factors known to the agents support the agent's reasonable suspicion that Alioto was involved in drug activity." U.S. Opposition 13:18-21 (emphasis in original). That conclusion is not supported by Fourth Amendment jurisprudence.

Preliminarily, it must again be noted that agents must have had reasonable suspicion of drug trafficking at the time the detention occurred, which entails more than simple amorphous "drug activity." See, e.g., *United States v. Ayarza,* 874 F.2d 647, 651 (9th Cir. 1989).  An "inchoate and unparticularized suspicion or 'hunch'" cannot withstand Fourth Amendment scrutiny. *United States v. Sokolow,* 490 U.S. 1, 7 (1989) (quoting *Terry, 392 U.S. at 27*). Plaintiff accuses Claimant of taking a "piece meal" approach that somehow disregards the totality of circumstances. However,

> Even though reasonable suspicion may be founded upon factors consistent with innocent travel, *Sokolow, 490 U.S. at 9-10,* "some facts must be outrightly dismissed as so innocent or susceptible to varying interpretations as to be innocuous." [*U.S. v.*] *Lee*, 73 F.3d [1034] at 1039 [(10th Cir. 1996]; *Reid v. Georgia,* 448 U.S. 438, 441, 65 L. Ed. 2d 890, 100 S. Ct. 2752 (1980). We therefore examine**, both individually and in the aggregate**, the factors found by the trooper and the district court to give rise to reasonable suspicion to detain Mr. Wood's car.
>
> *United States v. Wood,* 106 F.3d 942, 946 (10th Cir. 1997)

With that in mind, Claimant dedicated a significant portion of his motion to suppress

supporting the argument that factors amounting to drug courier profile evidence are insufficient, *individually*, *or in the aggregate*, to provide reasonable suspicion of any crime, let alone the crime of drug trafficking.

### i.    The Present Facts, Individually, Are Not Sufficient To Establish Reasonable Suspicion

Flying to a drug source city or a supply state is not suspicious because so many states and/or major U.S. cities have been identified as such, and in any case, has only contributed to reasonable suspicion analysis when a traveler's ground time is short compared to his flight time. See Claimant's Motion to Suppress 14:3 -15:12. And, despite Plaintiff's unsupported contention that Claimant's "original reservation was for a quick turn around" (U.S. Opposition 11:16), Claimant's original itinerary of three days ground time on a trip from San Francisco to Atlanta is not a quick turn according to the case law. Even in *United States v. Sokolow*, *supra,* 490 U.S. 1, 9, a 5-4 U.S. Supreme Court stated, "While a trip from Honolulu to Miami, standing alone, is not a cause for **any** sort of suspicion, here there was more: surely few residents of Honolulu travel from that city for 20 hours [one way] to spend 48 hours in Miami during the month of July.") (emphases added)." The "turn around" in the present case is hardly comparable, and standing alone, warrants no suspicion.

The fact that Claimant did not check luggage for a three or five day trip and changed his departure flight three times, are pieces of circumstantial evidence, so common and so innocuous, and done by so many travelers that it cannot seriously be argued (and has indeed not been supported by any citation to case law) to warrant suspicion.  Moreover, though Claimant did not check any baggage, he was observed with two carry on pieces of luggage in tow, one a gym bag, and the other a roller type suitcase. Therefore, it is incomprehensible what incriminating inference can be made by the fact that Claimant *did not check* luggage.  Plaintiff argues that the triple hearsay evidence of Claimant allegedly bribing a Delta Airlines employee to allow him to remain with his bag, suggests that the desire to remain with one's bag is incriminating. Mere common sense dictates that such an argument is absurd, as "a very large category of presumably innocent travelers" would naturally prefer to remain with their baggage, and is the reason why virtually all airlines have a two-item carry on limit.

10

Plaintiff's late and questionable introduction of Claimant's nervousness, even if deemed admissible, is of very little significance to a reasonable suspicion analysis, and is certainly not sufficient, to individually provide a basis for reasonable suspicion.

> **We have held consistently that nervousness is "of limited significance" in determining whether reasonable suspicion exists**. See *United States v. Wald,* 216 F.3d 1222, 1227 (10th Cir. 2000). Extreme and continued nervousness, however, "is entitled to somewhat more weight." *United States v. West,* 219 F.3d 1171, 1179 (10th Cir. 2000).  Mr. Williams points to *Wood*, where the panel concluded that the officer's testimony as to the defendant's rapid breathing, trembling hands, and throat-clearing constituted a mere "generic claim of nervousness," and therefore discounted the nervousness as a factor in its reasonable suspicion analysis..

*United States v. Williams*, 271 F.3d 1262, 1268-69 (10th Cir.2001) (emphases added).

This Ninth Circuit Court of Appeals has explicitly held that nervousness alone (extreme or otherwise) is insufficent as a basis for reasonable suspicion. In *United States v. Chavez-Valenzuela*, 2001 U.S. App. LEXIS 28326 (9th Cir. 2001), that Court of Appeals found persuasive the reasoning in *Wood, supra*, and held that nervousness, "even the extreme nervousness Chavez-Valenzuela exhibited here -- in the absence of other particularized, objective factors, does not support a reasonable suspicion of criminal activity..." *United States v. Chavez-Valenzuela*, 2001 U.S. App. LEXIS 28326 (9th Cir. 2001).  Because "it is common for most people to exhibit signs of nervousness when confronted by a law enforcement officer whether or not the person is currently engaged in criminal activity ... ", nervousness alone will not suffice for reasonable suspicion. *Id.* at 15 (citation omitted).

Next, Plaintiff over exaggerates Claimant's criminal record by qualifying it as "7 prior drug arrests, three of them resulting in convictions. Plaintiff's history of possession of small amounts of marijuana, can hardly be said to, alone, be a factor sufficient to establish reasonable suspicion:

> We have previously cautioned that prior criminal involvement alone is insufficient to give rise to the necessary reasonable suspicion to justify shifting the focus of an investigative detention from a traffic stop to a narcotics or

11

weapons investigation. [citations omitted]. "If the law were otherwise, any person with any sort of criminal record . . . could be subjected to a Terry-type investigative stop by a law enforcement officer at any time without the need for any other justification at all." [citation omitted]

*United States v. Wood,* 106 F.3d 942, 948 (10th Cir. 1997)

In *Wood*, prior *narcotics* history and nervousness were not enough for reasonable suspicion for any crime. In the present case, this court should easily conclude that Claimant's prior involvement with possession of small amounts of marijuana is not, individually, a valid basis for reasonable suspicion of drug trafficking. Claimant's "criminal history" does not individually provide a basis for reasonable suspicion of present involvement in any crime, let alone the crime of drug trafficking.

Additionally, the fact that Claimant freely admitted carrying currency does not provide a particularized and objective basis for suspicion of drug trafficking. See, e.g., *U.S. v. $ 191,910.00 in U.S. Currency*, 16 F.3d 1051, 1072 (9th Cir. 1993); see also, Claimant's Motion to Suppress 18:21-19:5. The fact that Claimant mentioned his family's political notoriety in a conversation that Plaintiff repeatedly characterizes as consensual and casual, could suggest any number motivations on the part of someone in Claimant's position. Even if this information "often" mentioned "in an attempt to obtain preferential treatment or deflect further scrutiny" (See Byrd Declaration 4:6-7), such contrived speculation does not create a *reasonable* inference of any criminal activity.

Lastly, and as will be discussed, *infra*, an airline ticket purchased in cash the day before travel, will not suffice to establish reasonable suspicion. See *United States v. Eustaquio*, 198 F.3d 1068 (8th Cir. 1999). Therefore, all of the factors that Plaintiff cites, do not individually establish reasonable suspicion of any crime, and it is appropriate to view them individually before viewing them collectively.

    ii.    **The Present Facts, in the Aggregate, Are Not Sufficient To Establish Reasonable Suspicion**

Plaintiff argues that discussing and analyzing the individual factors is somehow inappropriate, and accuses Claimant's analysis as disregarding the totality of the circumstances. However, "[r]eliance on the mantra 'the totality of the circumstances' cannot metamorphose these

12

facts into reasonable suspicion ... it is "impossible for a combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation." See *United States v. Wood,* 106 F.3d 942, 948 (10th Cir. 1997).

In any case, in its unsupported contentions that the present facts *all* warrant suspicion, Plaintiff has done nothing to distinguish this case from totality of circumstances present in *Reid* or *Eustaquio*, where Courts clearly held facts similar to the present were insufficient to withstand a Fourth Amendment challenge.

In *United States v. Eustaquio*, 198 F.3d 1068 (8th Cir. 1999), the facts are particularly and strikingly similar to the present facts. There, the defendant (1) exhibited nervous movement and a straight-ahead gaze; (2) chose a direct path to leave the terminal; (3) did not having any checked luggage; (4) arrived from a source city for narcotics trafficking; (5) made a same-day purchase of a one-way airline ticket with cash; (6) there were no friends and family meeting defendant at the airport; (7) she did the opposite of what the stopping officer asked; and (8) exhibited a bulge under her clothing. See 198 F.3d 1068,1071. Despite the fact that the circumstances in *Eustaquio* were even more suspicious that in the present case, , and even though an officer could speculate that the bulges in her clothing were illegal narcotics or currency, the court still invalidated the search because of a lack of reasonable suspicion. The *Eustaquio* court stated:

> Even when viewing all the facts **collectively**, see *United States v. Campbell, 843 F.2d 1089, 1093-94 (8th Cir. 1988)*, **and taking into account the officer's prior experiences and knowledge**, see *United States v. Ortiz, 422 U.S. 891, 897, 45 L. Ed. 2d 623, 95 S. Ct. 2585 (1975)*, we are convinced **the officers could not reasonably suspect the defendant of any criminal activity**.
>
> *Eustaquio*, *supra*, 198 F.3d at 1071 (emphases added).

Here, Claimant admitted to having currency, so officers did not have to speculate that Claimant had currency, but they did have to speculate, on an inchoate hunch, that that currency was related to any narcotics transaction. Moreover, Claimant's straightforward and truthful (to the best of their knowledge) responses to inquiries about his travel itinerary, identity, and open admission that he was carrying currency should have *reduced* any suspicion in the mind of a

1    reasonable agent. See *United States v. $242,484.00*, 351 F.3d 499, 512 (11th Cir. 2003)

2    ("Stanford's traveling under her own name and her honesty about her possession of the currency

3    and its amount go a long way to easing any suspiciousness raised by some evasiveness with the

4    agents.")

5        Furthermore, plaintiff's arguments are clouded by the fact that they erroneously view the

6    Fourth Amendment as permitting evidence acquired after the seizure to contribute to the totality

7    of circumstances at the time of the detention. See U.S. Opposition 12, n.20 (arguing relevancy of

8    the fact that the total amount of money that the illegal search uncovered differed from the

9    amount that Claimant had claimed he was carrying before the illegal search). Similarly, Plaintiff

10   also erroneous  views agent Byrd's subjective suspicions as somehow relevant to the Fourth

11   Amendment analysis. See U.S. Opposition 12, n.20 (arguing that *agent Byrd's* suspicions were

12   aroused because he assumed Claimant was trying to obtain preferential treatment by talking

13   about his family's notoriety in San Francisco, rather that the numerous other inferences that could

14   be derived from the circumstances).  If such arguments carried the day in a Fourth Amendment

15   challenge, the Fourth Amendment would certainly be a toothless artifact of history.

16       As a final note, the court in *Wood* stated:

17       After stripping away the factors which must be disregarded because they are
         innocuous, we are left with Mr. Wood's **nervousness** and his **prior narcotics**
18       **history**--both factors which this court has cautioned are of **only limited**
         **significance** in determining whether reasonable suspicion existed. To sanction a
19       finding that the Fourth Amendment permits a seizure based on such a weak
         foundation would be tantamount to subjecting the traveling public to virtually
20       random seizures, inquisitions to obtain information which could then be used to
         suggest reasonable suspicion, and arbitrary exercises of police power.
21

22       *Wood*, *supra*, 106 F.3d 942, 948 (emphases added).

23

24       Here, the inquisition of agents revealed nothing, individually or in the aggregate, that

25   should have aroused any reasonable suspicion in the mind of an objectively reasonable drug

26   enforcement agent. It is respectfully requested that this court place its stamp of disapproval on

27   the warrantless seizure and search here - one that was founded on such speculative and weak

28   profiling evidence. The troubling inconsistencies in agent Byrd's accounts of the incident and the

14

hearsay evidence suggest a weak attempt by agent Byrd to save the illegal seizure from its proper invalidation. The speculative suppositions of Plaintiff - erroneously interpreting *all* the factors as suspicious - cannot supply the particularized and objective basis for reasonable suspicion of drug trafficking on the part of the Claimant.

### IV.    The Detention of Claimant's Luggage Fails under *Place*

Plaintiff argues that agents acted diligently because they took merely five minutes to obtain a dog sniff, thereby fulfilling the requirements of *Place*, and *$ 191,910.00, supra*. See U.S. Opposition 14:10-16. However, the reasonableness of a luggage detention has both an absolute time component, as Plaintiff argues, and a context specific component "The context-specific component, by contrast, focuses not on the absolute length of the detention (and thus the absolute intrusion on liberty) but on whether law enforcement officers unduly extended the detention by their lack of diligence. This component recognizes that even a relatively short detention can be unreasonable if it could have been much shorter had the police acted diligently." *$ 191,910.00, supra,* at 1059-1060.

What makes the delay unreasonable here is the fact that the agents waited until Claimant had exited the plane, walked through the concourse, and stood outside of the airport waiting for his ride for several minutes. And even then, agents did not dispatch for the drug sniff dog.  They did so only after they engaged Claimant in a lengthy conversation.

Plaintiff argues that because agent Byrd claimed he wanted to wait and see if Claimant, after deplaning, was going to get any bags agents were unaware of, it somehow tolls the time for agents to diligently obtain a dog sniff. However, such an argument is disingenuous: agents knew that he hadn't checked any bags, and they saw that he had two carry on pieces of luggage in tow, one of them a roller type suitcase.  There is no reason why the agents should have waited so long. The agents could have stopped him immediately after deplaning and minimized the delay and interruption of his travel plans. Instead, they hoped that Plaintiff would do something incriminating, which he never did, and only then dispatched for a drug sniff dog.

### CONCLUSION

15

For all the foregoing reasons, Claimant's motion to suppress should be granted, the case against him dismissed and his seized currency be returned to him

Dated: 25 July 2008

Respectfully submitted,


S/DAVID M. MICHAEL
DAVID M. MICHAEL
Attorney for Claimant FRANK JOSEPH ALIOTO


**<u>CERTIFICATE OF ELECTRONIC FILING</u>**

The undersigned hereby certifies that, on 25 July 2008, he caused to be electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Susan B. Gray CSB 100374
Office of the U.S. Attorney
450 Golden Gate Avenue
San Francisco CA 94102
Susan.B.Gray@usdoj.gov


S/DAVID M. MICHAEL
DAVID M. MICHAEL

16

17